**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leonard Bruce HUDGINS,**
**Defendant–Appellant.**

No. 94–5873.

United States Court of Appeals,
Sixth Circuit.

Argued March 30, 1995.

Decided April 21, 1995.

Steven H. Cook, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Knoxville, TN, for plaintiff-appellee.

Herbert S. Moncier, David S. Wigler (argued and briefed), Knoxville, TN, for defendant-appellant.

Before: KENNEDY and MILBURN, Circuit Judges; WISEMAN,* District Judge.

MILBURN, Circuit Judge.

Defendant appeals the denial of his motion to suppress evidence and subsequent conviction following a conditional plea of guilty to a charge of possession of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). The issue on appeal is whether the district court erred in denying defendant's motion to suppress evidence seized during a search of defendant's automobile after his arrest. For the reasons that follow, we affirm.

---

* The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

## I.

### A.

On December 18, 1992, two officers of the Knox County Sheriff's Department were patrolling an area of west Knox County, Tennessee. At approximately 10:30 p.m., they observed defendant's automobile run a stop sign posted at the intersection of Mars Hill Road and Middlebrook Pike. The officers turned around and followed defendant down Middlebrook Pike and Robinson Road. When the officers reached a location they felt was safe to conduct a traffic stop, they turned on their police cruiser's blue lights. Defendant pulled into the intersection of Robinson Road and Broken Arrow Road and then parked on Broken Arrow Road.

The officers, using their police cruiser's public announcement system, asked defendant to step out of and to the rear of his automobile. After informing defendant that he had been stopped for running a stop sign, the officers asked defendant for his driver's license. Defendant produced a Tennessee identification card and subsequently admitted that his license had been suspended for speeding and reckless driving. One of the two officers contacted the Sheriff's Department records bureau by radio to verify the status of defendant's driver's license and to check defendant's driving history. It was confirmed that defendant's driver's license had been suspended and that defendant had been involved in two traffic accidents, convicted of reckless driving on two occasions, and convicted of speeding on a third occasion.

Defendant was then placed under arrest and searched. Subsequently, he was handcuffed and placed in the back of the police cruiser. When the officers started toward defendant's automobile, defendant informed them that there was a loaded pistol in his briefcase. The officers went to defendant's automobile and conducted a search of the passenger compartment. They searched the briefcase first because defendant had told them it contained a loaded pistol. In the briefcase, the officers found a fully loaded .9

millimeter Smith & Wesson semiautomatic pistol, over $3000 in cash, and 54.3 grams of 80% pure cocaine. They also found a cocaine sifter on the front passenger seat, a cellular telephone, an open half-gallon bottle of vodka, and a two-liter bottle containing Sprite. Although it was apparent that defendant had been drinking, he did not appear to be intoxicated. However, because defendant was arrested, the officers impounded defendant's automobile and had it towed.

### B.

On June 16, 1993, a federal grand jury returned a two-count indictment against defendant. Count one charged defendant with possession of a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), and count two charged defendant with possession of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).[1]

On July 23, 1993, defendant filed a motion to suppress all evidence seized from the passenger compartment of his automobile on December 18, 1992. In the government's response, it argued that the search of defendant's automobile was proper as a search incident to an arrest and as an inventory search. On September 21, 1993, a suppression hearing was held before a magistrate judge. At the suppression hearing, defendant advanced theories that had not been raised in his motion to suppress. Accordingly, defendant moved that the suppression hearing be continued and that he be permitted to present additional evidence. The magistrate judge granted the motion and directed defendant to brief the additional theories that had been advanced at the suppression hearing.

In his additional brief, defendant argued that (1) the government had not argued that the search was proper as a search incident to defendant's arrest, (2) the search was not a proper inventory search, and (3) defendant's arrest was improper under Tennessee law. In its response filed November 12, 1993, the government argued that (1) defendant was properly arrested, (2) the search of the passenger compartment of defendant's automobile was proper as a search incident to defendant's arrest, (3) the search of defendant's automobile was proper as an inventory search, and (4) the exclusionary rule should not be applied because the evidence inevitably would have been discovered. On December 8, 1993, a second suppression hearing was held, and additional evidence was taken. Defendant filed a third brief on December 13, 1993, in which he argued that the search-incident-to-arrest doctrine was not applicable in this case because the officers removed defendant from his automobile before they informed him that he was under arrest.

On January 31, 1994, the magistrate judge filed a report and recommendation recommending that defendant's motion to suppress be denied on both grounds. Specifically, the magistrate judge recommended that the district court find that defendant was properly arrested and that the search of defendant's automobile was proper as a search incident to an arrest and as an inventory search.

On February 2, 1994, defendant pled guilty to count two of the indictment, possession of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). Defendant reserved the right to appeal the denial of his motion to suppress pursuant to Federal Rule of Criminal Procedure 11(a)(2).

On February 10, 1994, defendant filed objections to the report and recommendation of the magistrate judge and moved the district court to make a de novo determination of the findings to which defendant had objected. Defendant filed a supplemental memorandum supporting his objections and argued that (1) the inventory search was invalid because the officers acted improperly in impounding his automobile, and (2) the search-incident-to-arrest doctrine was not applicable in this case because the officers removed defendant from his automobile before they informed him that he was under arrest. In addition, defendant requested that the district court

---

1. A superseding 20–count indictment was issued on December 21, 1993, adding additional charges that were later dismissed pursuant to a

Federal Rule of Criminal Procedure 11(a)(2) plea agreement.

hear additional evidence. However, defendant did not object to the magistrate judge's finding that the arrest was proper.

On June 2, 1994, the district court held a hearing on defendant's motion to suppress. Defendant testified and presented other evidence through affidavits. Thereafter, the district court entered a memorandum and order addressing defendant's motion to suppress in which the district court found that the evidence was properly seized during the course of an inventory search. It disagreed, however, with the magistrate judge's recommendation that the search was also proper as a search incident to an arrest. Defendant was sentenced to the mandatory minimum of 60 months imprisonment with respect to count two of the indictment. A judgment of conviction was entered on June 14, 1994. This timely appeal followed.

## II.

■ Defendant argues that the district court erred in denying his motion to suppress evidence seized from his automobile. Specifically, defendant asserts that the district court improperly applied a subjective standard, rather than the objective standard required by the Fourth Amendment, in assessing the "standardized criteria" that guided the officers' decision to impound defendant's automobile after arresting him. The government responds that defendant's motion to suppress was properly denied because the search of defendant's automobile was a proper inventory search. In addition, the government argues that the search of defendant's automobile was proper as a search incident to an arrest.

■ A district court's denial of a motion to suppress will be affirmed on appeal if there exists any proper reason for the denial, even one not relied on by the district court. *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir.1993) (quoting *United States v. Barrett*, 890 F.2d 855, 860 (6th Cir.1989)); *see Hilliard v. United States Postal Serv.*, 814 F.2d 325, 326 (6th Cir.1987) (stating that we will affirm a correct result reached by a district court even where we reach that result for different reasons). Furthermore, we " 'must accept the findings of fact upon which the district court relied in dealing with suppression of evidence unless those findings are *clearly erroneous.*' " *Garza*, 10 F.3d at 1245 (quoting *United States v. French*, 974 F.2d 687, 691 (6th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993) (emphasis in original)). The district court's determinations that are conclusions of law are subject to de novo review. *Id.; see also United States v. Briggman*, 931 F.2d 705, 708 (11th Cir.) (per curiam), *cert. denied*, 502 U.S. 938, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991). In view of this standard, we will address the government's argument that the search of defendant's automobile was proper as a search incident to an arrest first because we believe that the resolution of that issue is dispositive.

■ The Supreme Court developed the search-incident-to-arrest doctrine in *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969), holding that an officer making a lawful custodial arrest may search the arrestee and the immediately surrounding area into which he might reach in order to obtain a weapon or destroy evidence. Later, in ·*United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Supreme Court rejected the "suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." *Robinson*, 414 U.S. at 235, 94 S.Ct. at 477. The Court announced a straightforward rule that "[i]t is the fact of the lawful arrest which establishes the authority to search" and held that a full search of the person is reasonable in the case of a lawful custodial arrest. *Id.* In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court addressed the applicability of the search-incident-to-arrest doctrine in the context of an automobile search when an occupant had been arrested, and the Court fashioned a clearly-defined rule. In *Belton*, the Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*,

453 U.S. at 460, 101 S.Ct. at 2864; see *W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment* § 7.1(c), at 12–13 (2d ed.1987). The search of an automobile is generally reasonable even if the defendant has already been removed from the automobile to be searched and is under the control of the officer. *United States v. White*, 871 F.2d 41, 44 (6th Cir.1989); *see also Belton*, 453 U.S. at 460, 101 S.Ct. at 2864 (holding that the search of an automobile passenger compartment after the defendant was removed from the automobile and secured was reasonable).

■ Where the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile), a subsequent search of the automobile's passenger compartment falls within the scope of *Belton* and will be upheld as reasonable. *See United States v. Strahan*, 984 F.2d 155, 159 (6th Cir.1993) ("Indeed, *Belton* clearly limits its application to only those settings where an officer makes a custodial arrest 'of the *occupant* of an automobile....' *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864. (emphasis added).") (parallel citation omitted). Our decisions have consistently upheld the search of the passenger compartment of an automobile when the officer initiated contact with the defendant while the defendant was still within the automobile later searched, regardless of whether the defendant was arrested while actually occupying the automobile or after having recently been removed from the automobile. *See United States v. Thomas*, 11 F.3d 620, 628 (6th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1570, 128 L.Ed.2d 214 *and* — U.S. ——, 114 S.Ct. 1571, 128 L.Ed.2d 215 (1994);

*United States v. Patterson*, 993 F.2d 121, 122–23 (6th Cir.1993) (per curiam); *White*, 871 F.2d at 44; *United States v. Hatfield*, 815 F.2d 1068, 1071–72 (6th Cir.1987). However, where the defendant has voluntarily exited the automobile and begun walking away from the automobile before the officer has initiated contact with him, the case does not fit within *Belton's* bright-line rule, and a case-by-case analysis of the reasonableness of the search under *Chimel* becomes necessary. *See Strahan*, 984 F.2d at 159 (stating that *Belton* was inapplicable and concluding that the search was unreasonable under *Chimel* ).[2]

In the district court's memorandum and order addressing defendant's motion to suppress in this case, the district court stated:

> During oral argument before this court, the government argued that a distinction should be drawn between the cases where the officer first contacts the occupants while they are inside their vehicles (*i.e.*, *Belton* ) and those where the officer first contacts the occupants after they have exited their vehicles (*i.e., Strahan* ).
>
> The court is unwilling to draw this distinction because of the rationale behind allowing officers a limited opportunity to search a vehicle incident to an occupant's arrest.... [I]t cannot matter whether the occupants exited their vehicle at their own or the officer's bidding. What matters is whether they are situated so that they could retrieve a weapon from their vehicle or conceal or destroy evidence.

J.A. 24–25. However, as already stated, that is precisely the distinction that we have reasoned that *Belton* dictates in determining the propriety of a search incident to an arrest. *Compare Strahan*, 984 F.2d at 159 (determining that a search was not proper as a search incident to an arrest where the officer first contacted the defendant after he had

---

2. The only case decided by this court that does not clearly fall into one of these two categories is *United States v. Mans*, 999 F.2d 966, 968–69 (6th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 567, 126 L.Ed.2d 467 (1993). In *Mans*, it appears that the defendant exited his automobile because he knew an officer was following him. *Id.* at 968. Thus, even though the defendant had just exited his automobile when the officer first

verbally communicated with him, the officer had initiated contact with the defendant sometime earlier when the defendant knew he was being followed. *See id.* at 968–69. Accordingly, the court applied *Belton* and held that the search was a proper search incident to arrest. *Id.* Therefore, *Mans* more closely resembles *Belton*, *Thomas* and *White* than it resembles *Strahan*.

exited his automobile) *with White,* 871 F.2d at 42, 44 (concluding that a search was proper as a search incident to an arrest where the officer first contacted the defendant while he was still inside his automobile). The district court went on to find that "defendant was too remote from his vehicle—he was handcuffed and standing behind his vehicle or sitting in the police cruiser—to justify the warrantless search of his vehicle as being a proper *Belton*-type search." J.A. 25.

After reviewing the propriety of the search in this case under the search-incident-to-arrest doctrine, we conclude that the search was proper as a search incident to an arrest. Before defendant exited his automobile, the officers had signalled confrontation by turning on their blue lights, pulling defendant over to the side of the road, and asking defendant to step out of his automobile. Shortly thereafter, defendant was arrested for driving on a suspended license, and he does not challenge the traffic stop or the subsequent arrest. After placing defendant in the back of the police cruiser, the officers searched the passenger compartment of defendant's automobile. On these facts, it is clear that *Belton* controls and that the search of defendant's automobile was proper as a search incident to an arrest. Because the denial of a defendant's motion to suppress will be affirmed on appeal if there exists any proper reason for the denial, *see Garza,* 10 F.3d at 1245, it is not necessary that we address defendant's argument that the district court applied the wrong standard in assessing the standardized criteria that guided the officers' decision to impound defendant's automobile after arresting him, *see Hilliard,* 814 F.2d at 326. Thus, defendant's motion to suppress was properly denied.

### III.

For the reasons stated, the judgment of the district court is AFFIRMED.